MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 80
Docket:         Ken-24-480
Argued:         May 7, 2025
Decided:        August 4, 2026

Panel:          STANFILL, C.J., and MEAD, CONNORS, and LAWRENCE, JJ, and HORTON, A.R.J.*


MAINE HUMAN RIGHTS COMMISSION

v.

D&L APARTMENTS et al.


STANFILL, C.J.

[¶1]  D&L Apartments and Darrell Sproul (collectively, D&L) appeal from a judgment entered by the Superior Court (Kennebec County, *Lipez, J.*) in favor of the Maine Human Rights Commission on its complaint asserting that D&L violated the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551-4634 (2015),[1] when expressing an unwillingness to rent an apartment to Justin Engstrom

---

* Justice Horton sat at oral argument and participated in the initial conference while he was an Associate Justice and, as directed and assigned by the Chief Justice, is now participating in this appeal as an Active Retired Justice.

[1] The 2015 version of the Maine Revised Statutes was in effect in June 2016 when the events giving rise to this matter occurred.  Several sections of the Maine Human Rights Act, including sections at issue in this case, have since been amended, but the amendments are not relevant to this appeal.  *See, e.g.*, P.L. 2021, ch. 476, § 3 (effective Oct. 18, 2021) (codified at 5 M.R.S. § 4581-A(1)(C) (2026)); P.L. 2015, ch. 457, § 3 (effective July 29, 2016) (codified at 5 M.R.S. § 4582-A(3) (2026)).

because of his prospective ownership of a service dog. We conclude that the trial court did not err in finding that D&L's conduct amounted to a violation of two separate provisions of the MHRA, and we therefore affirm the judgment.

## I. BACKGROUND

[¶2] The Superior Court found the following facts, all of which are supported by competent evidence in the record. *See, e.g.*, *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

[¶3] In 2011 and 2012, Justin Engstrom served a Marine combat deployment in Afghanistan. When he returned to the United States, he experienced an array of symptoms that adversely affected his mental health and ultimately led to his medical discharge from the military in 2014. Since then, he has received treatment for post-traumatic stress disorder.

[¶4] In 2013, Engstrom's primary care physician suggested that a dog might help alleviate some of his symptoms. In August 2015, he began communicating with a nonprofit organization that helps match veterans with assistance animals, and he was placed on a waitlist for an assistance dog.

[¶5] In 2016, Engstrom moved to Maine and lived with his parents while searching for his own housing. He believed that he might soon have an

assistance dog, so he looked for a residence that would be suitable for him and an assistance animal.

[¶6]  One of several landlords Engstrom contacted was Darrell Sproul, who is the owner and operator of D&L Apartments.  In June 2016, Engstrom and Sproul spoke briefly on the phone about an apartment in Hermon that Sproul had advertised for rent.  During the conversation, Engstrom asked Sproul whether dogs were allowed and Sproul told him they were not.  When Engstrom followed up by asking about "federally protected" or "service" dogs, Sproul reiterated "no dogs," and told him not to bother applying for the apartment.[2]  Believing that Sproul had no intention of renting to him because of his inquiry about dogs, Engstrom ended the conversation, and he did not request to see the apartment or apply for a lease.

[¶7] On March 30, 2018, the Commission filed a complaint against Sproul and D&L Apartments alleging, under the MHRA, unlawful housing discrimination on the basis of disability.  *See* 5 M.R.S. §§ 4612(4)(A), 4613(1).  The single-count complaint alleged three theories of liability:

---

[2] Sproul disputed Engstrom's version of the conversation and testified that he did not understand Engstrom to be asking for a reasonable accommodation for a disability.

4

- (1) that D&L had unlawfully refused to permit the use of a service animal,[3] *see* 5 M.R.S. § 4582-A(3);

- (2) that D&L had made a statement indicating a discriminatory limitation based on disability, *see id.* § 4581-A(1)(C); and

- (3) that D&L had, by refusing to permit the use of a service animal, unlawfully refused to rent the apartment, *see id.* § 4581-A(1)(B).

The Commission sought declaratory and injunctive relief, civil penal damages, actual damages, and punitive damages. *See* 5 M.R.S. § 4613(2)(B).

[¶8] D&L filed a motion for summary judgment, which the court (*Stokes, J.*) denied in September 2019. The court (*Lipez, J.*) held a nonjury trial in January 2024, at which only Engstrom and Sproul testified. The court issued a written judgment in the Commission's favor, finding that D&L had violated the MHRA by engaging in housing discrimination on the basis of disability. The court addressed each of the Commission's three liability theories in turn. First, the court found that D&L refused to permit the use of an assistance animal in violation of 5 M.R.S. § 4582-A(3), rejecting D&L's argument that the statute could not apply unless Engstrom already possessed an assistance animal when he spoke to Sproul on the phone. Next, the court found that D&L made a

---

[3] The parties and the trial court have used the term "assistance animal" throughout. The statute in effect at the relevant time used the term "service animal" but has since been amended to use the term "assistance animal." P.L. 2015, ch. 457, § 3 (effective July 29, 2016) (codified at 5 M.R.S. § 4582-A(3)). Any difference is inconsequential here.

statement indicating a "preference, limitation or discrimination" based on disability (or indicating an "intention to make any such preference, limitation or discrimination"), in violation of 5 M.R.S. § 4581-A(1)(C).  Finally, the court found it unnecessary to reach the Commission's third theory of liability—that D&L had violated 5 M.R.S. § 4581-A(1)(B) by refusing to rent the apartment to Engstrom.[4]

[¶9]  As remedies, the court required D&L to attend three hours of fair-housing training approved by the Commission, required D&L to develop an assistance-animal policy subject to the Commission's approval, and assessed a $10,000 civil penalty against D&L.  *See generally* 5 M.R.S. § 4613(2)(B) (setting forth a non-exhaustive list of remedies a court may impose after finding under the MHRA that unlawful discrimination occurred).  D&L timely appealed from the judgment.  *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶10]  D&L argues that the court erroneously interpreted the relevant statutes when it determined that D&L engaged in unlawful discrimination under 5 M.R.S. § 4581-A(1)(C) and 5 M.R.S. § 4582-A(3).

---

[4] We also do not reach this issue, because there is no cross-appeal.  *See* M.R. App. P. 2C(a)(1).

[¶11]  We review a trial court's "interpretation and application of the MHRA de novo." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52.

> When interpreting a statute, we give effect to the Legislature's intent by considering the statute's plain meaning and the entire statutory scheme of which the provision at issue forms a part. Only if the plain language of the statute is ambiguous will we look beyond that language to examine other indicia of legislative intent . . . . Statutory language is considered ambiguous if it is reasonably susceptible to different interpretations. When a statute administered by an agency is ambiguous, we review whether the agency's interpretation of the statute is reasonable and uphold its interpretation unless the statute plainly compels a contrary result.

*Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 14, 157 A.3d 223 (citations and quotation marks omitted).  "A trial court's factual findings are reviewed for clear error, and they must stand if they are supported by any competent evidence in the record." *Gordon*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

### A.     The court did not err in determining that D&L violated section 4581-A(1) of the MHRA.

[¶12]  The relevant section of the MHRA provided, at the time, as follows:

> It is unlawful housing discrimination, in violation of this Act:
>
> **1.   Sale or rental of housing and other prohibited practices.**  For any owner, lessee, sublessee, managing agent or other person having the right to sell or rent or manage a housing accommodation, or any agent of these, to:
>
> . . . .

> **C.** Make . . . or cause to be made . . . any . . . statement . . . relating to the . . . rental or lease of the housing accommodation that indicates any preference, limitation or discrimination based upon . . . physical or mental disability . . . or an intention to make any such preference, limitation or discrimination.

5 M.R.S. § 4581-A(1)(C).

[¶13]  D&L argues that Sproul's statements to Engstrom did not constitute a violation of this statute and suggests that the court erred in failing to consider Sproul's subjective intention when determining liability.

[¶14]  The language of this statute is unambiguous.  Section 4553(9-E) of the MHRA, as it existed at the time of Engstrom's inquiry, defined a "service animal" as (1) an animal deemed "necessary to mitigate the effects of a physical or mental disability" or (2) an animal that has been "trained to do work or perform tasks for the benefit of an individual with a physical or mental disability."  5 M.R.S. § 4553(9-E)(A).  Because the MHRA's definition of service animals is limited to animals that assist individuals who have physical or mental disabilities, and because the MHRA unambiguously prohibits discrimination based on physical or mental disability in the sale or rental of a home, a landlord's rule against service animals constitutes a statement of

8

"preference, limitation or discrimination based upon . . . physical or mental disability" in violation of the statute. *Id*. § 4581-A(1)(C).

[¶15] Furthermore, the court did not err in determining that Sproul's subjective intent when stating that no dogs were allowed was not determinative. We look to analogous federal case law to interpret the relevant provision of the MHRA. *See Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 14, 974 A.2d 276 ("Federal law guides our construction of the MHRA."); *Me. Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261 (Me. 1979) ("[T]he Maine [L]egislature by adopting provisions that generally track the federal antidiscrimination statutes intended the courts to look to the federal case law to provide significant guidance in the construction of our statute." (quotation marks omitted)).

[¶16] The Fair Housing Act provides that it is unlawful "[t]o make . . . or cause to be made . . . any . . . statement . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C.A. § 3604(c) (Westlaw through Pub. L. No. 119-100). As the trial court noted, federal courts have held that under section 3604(c), "no showing of a subjective intent to discriminate is . . . necessary to establish a

violation." *Jancik v. Dep't of Hous. & Urb. Dev.*, 44 F.3d 553, 556 (7th Cir. 1995). Instead, section 3604(c) is violated if a landlord's statement suggests to an "ordinary" listener "that a particular protected group is preferred or dispreferred for the housing in question." *Id.* (alteration and quotation marks omitted). Applying that test, courts have concluded that the statute is violated by a statement that would discourage a potential applicant who belonged to a particular protected group. *Id.*

[¶17] In this case, the court found that, after Sproul told Engstrom about the no-dogs policy, Engstrom specifically asked Sproul whether the policy covered service dogs and that Sproul reiterated that no dogs were permitted. Based upon Engstrom's testimony, the trial court did not err in determining that Sproul's statements indicated, to an ordinary listener, "a limitation on individuals with a disability who require the use of assistance dogs."

[¶18] For all these reasons, the trial court did not err in determining that the Commission met its burden to prove by a preponderance of the evidence that D&L violated section 4581-A(1)(C) of the MHRA.[5] 5 M.R.S. §§ 4581-A(1)(C), 4631.

---

[5] Although we conclude that the relevant provisions of the MHRA are not ambiguous, we note that our view is consistent with the Commission's interpretation. *See Scamman*, 2017 ME 41, ¶ 18, 157

### B. The court did not err in determining that D&L violated section 4582-A of the MHRA.

[¶19] At the time of the incident giving rise to this case, 5 M.R.S. § 4582-A(3) provided, in relevant part:

> It is unlawful housing discrimination, in violation of this Act:
>
> . . . .
>
> **3. Service animals.** For any owner, lessor, sublessor, [or] managing agent . . . to refuse to permit the use of a service animal or otherwise discriminate against an individual with a physical or mental disability who uses a service animal at the housing accommodation unless it is shown by defense that the service animal poses a direct threat to the health or safety of others or the use of the service animal would result in substantial physical damage to the property of others or would substantially interfere with the reasonable enjoyment of the housing accommodation by others.[6]

[¶20] The trial court held that under the plain language of the statute, Sproul violated this provision by stating, without any sort of qualification for service dogs, that no dogs were permitted. The court rejected D&L's argument that the statute does not apply to the prospective use of service dogs. The court stated,

> Section 4582-A(3) defines "unlawful housing discrimination" in two ways: first, as a "refus[al] to permit the use of a service animal";

---

A.3d 223 ("[W]e give deference to an agency's reasonable interpretation of an ambiguous statute that it administers."); *E. Me. Conservation Initiative v. Bd. of Env't Prot.*, 2025 ME 35, ¶ 22, 334 A.3d 706.

6 This section of the MHRA has no analog in the Fair Housing Act.

and second, as "discriminat[ion] against an individual with a physical or mental disability who *uses a service animal at the housing accommodation.*" 5 M.R.S. § 4582-A(3) (emphasis added). *The limiting language in the second clause, which seems to require present use of a service animal*, is notably absent from the first clause.

(Alterations in original) (second emphasis added.)

[¶21] Thus, at the heart of the debate is whether the Legislature intended for the "limiting language in the second clause," requiring the present use of a service animal, to apply to the first clause.

[¶22] We agree with the trial court that the language here is clear and the limiting language in the second clause does not apply to the first.[7] We therefore agree with the court that the provision applies to prospective use of a service animal.[8]

---

[7] Had it intended that the limiting language apply to both clauses, the Legislature could have crafted the section to say so, specifically by including a preposition at the end of the first clause. For example, the Legislature may have inserted the word "by" into the first clause such that the relevant section provided that it was a violation for a lessor to "refuse the use of a service animal *by* or otherwise discriminate against an individual with a physical or mental disability who uses a service animal." In this way, the section at issue here stands in contrast to the one we interpreted in *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, 86 A.3d 52. In that case, the relevant provision of the MHRA rendered it unlawful for "any person furnishing rental premises or public accommodations to refuse to rent or impose different terms of tenancy *to* any individual who is a recipient of federal, state or local public assistance." *Id.* ¶ 13 (quoting 5 M.R.S. § 4582 (2007)) (emphasis added). In that instance the preposition, namely "to," could apply to both subsequent clauses. The relevant preposition here is "against" which cannot logically apply to the first clause.

[8] We also note this reading of the statute furthers the Legislature's intent in enacting the MHRA. It is difficult to imagine that the Legislature, in seeking to combat discrimination on the basis of disability and on the specific basis of the need for a service animal, meant to allow landlords to tell prospective tenants (or existing tenants not *yet* using a service animal) that they would not be able to use a service animal at the residence in question. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621 (stating that we "interpret the plain language by taking into account the subject matter

12

[¶23]  D&L argues that the lack of a comma separating the clauses in the subsection favors a unified reading.  We recently noted, however, that "[w]hile the *presence* of a comma could suggest that the two phrases are not connected, *see Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 14, 179 A.3d 312, the *absence* of a comma does not indisputably mean that the two parts of [the] sentence must unambiguously be united in substance, *see Hayes v. State*, 247 A.2d 101, 102 (Me. 1968) (stating that punctuation is 'subordinate to the text and is never allowed to control its plain meaning' (quotation marks omitted))." *Smith v. Henson*, 2025 ME 55, ¶18 n. 11, 339 A.3d 816.  Thus, the absence of a comma does not necessarily suggest a unified reading of the phrases, particularly when the statutory scheme favors an alternative reading.  *See O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 72 (1st Cir. 2017) (highlighting that the presence or absence of a comma may not be determinative).

---

and purposes of the statute, and the consequences of a particular interpretation"); 5 M.R.S. §§ 4552, 4581 (explaining the rights and policies guiding the housing-discrimination chapter of the MHRA). The nature of related statutory provisions also supports this interpretation. *See, e.g.*, *Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621 (stating that "we examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language" (quotation marks omitted)).  For example, section 4582-A(1) prohibits landlords from refusing to permit reasonable modifications of "existing premises occupied or to be occupied" in some circumstances. 5 M.R.S. § 4582-A(1). Another portion of the MHRA prohibits landlords from inquiring into the protected characteristic of any "prospective" tenant. 5 M.R.S. § 4581-A(1)(A).  The overall structure of the MHRA thus suggests that the Legislature intended to combat discrimination against prospective tenants and thus a party need not be presently using a service animal to be protected.

[¶24]    Because the statute unambiguously prohibits discrimination against a prospective tenant based upon the tenant's current or potential use of a service animal, we conclude that the court did not err in determining that D&L violated section 4582-A of the MHRA.  We thus affirm the trial court's findings of liability under both relevant sections of the MHRA.

The entry is:

Judgment affirmed.

Carl E. Woock, Esq. (orally), Tyler J. Soucy, Esq. (orally), and Stephen C. Smith, Esq., Steve Smith Trial Lawyers, Augusta, for Appellant D&L Apartments

Barbara Archer Hirsch, Esq., and Colin R. Hurd, Esq. (orally), Maine Human Rights Commission, Augusta, for appellee Maine Human Rights Commission

Kennebec County Superior Court docket number CV-2018-49
FOR CLERK REFERENCE ONLY